NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GINA MICHAELS,** | Civ. No. 2:14-cv-01473 (WJM) |
| **Plaintiff,** | |
| | **OPINION** |
| v. | |
| **CAROLYN W. COLVIN ACTING COMMISSIONER OF SOCIAL SECURITY,** | |
| **Defendant.** | |

**WILLIAM J. MARTINI, U.S.D.J.:**

    Plaintiff Gina Michaels brings this action pursuant to 42 U.S.C. §§ 405(g) seeking review of a final determination by the Commissioner of Social Security (the "Commissioner") denying her Title II application for a period of disability and disability insurance benefits, and Title XVI application for supplemental security income. For the reasons that follow, the Commissioner's decision is **AFFIRMED**.

    **I.    LEGAL STANDARDS**

    **A. The Five-Step Sequential Analysis**

    Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to

receive benefits (and the analysis ends); if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

**B. Standard of Review**

For the purpose of this appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the Administrative Law Judge ("ALJ") are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

**II.   BACKGROUND**

Plaintiff – a fifty-year-old resident of Rockaway, New Jersey – seeks a finding of disability on the basis of the following impairments: (1) chronic obstructive pulmonary disease ("COPD"); (2) obsessive compulsive disorder ("OCD"); (3) a back disorder; (4) asthma; (5) drug use (now in remission); and (6) other affective disorders, including anxiety and depression. Administrative Transcript ("Tr.") 21. Plaintiff has a 10th grade education and has no relevant prior work experience for the purposes of the Social Security Regulations. Tr. 25, 32.

On April 15, 2010, Plaintiff filed a Title II application for a period of disability and disability insurance benefits ("DIB"), and a Title XVI application for supplemental security income. Tr. 18. Plaintiff's application alleged that she could not work because she suffered from a variety of impairments, including asthma, Hepatitis C, hypothyroidism, drug addiction, and other affective disorders. Tr.194. Plaintiff states that her mood disorders stem from the fact that her father molested her when she was a child. Tr. 57, 517. The ALJ denied Plaintiff's claim on September 27, 2012. Tr. 33. In doing so, the ALJ concluded that Plaintiff possessed the residual functional capacity ("RFC") to perform sedentary work and was therefore "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Tr. 33. On January 19,

2014, the Appeals Council denied Plaintiff's request for a review of that decision.[1]  Tr. 15. Plaintiff now appeals.

### A. Summary of the Record

The record includes medical records from treating physician Dr. Arjun Dhirmalani, M.D., reports from social worker Chananyah Silverman, LSW, opinions from two non-examining sources, assessments from Social Security Administration physicians Dr. Henry Rubenstein, M.D. and Dr. Alan Malter, M.D., testimony from vocational expert ("VE") Patricia Sasona, Plaintiff's own testimony, and other medical records.

Dr. Dhirmalani, who is Plaintiff's treating physician, submitted a report indicating that Plaintiff was only capable of less than sedentary work, *i.e.*, Plaintiff could only stand and/or walk for no more than two hours per day and had limited ability to push or pull objects while working.  Tr. 514.  The record also consists of a report from Dr. Dhirmalani indicating that Plaintiff suffers from asthma, COPD, and lumbosacral radiculopathy.  Tr. 359.  With respect to the non-examining source reports, one report noted that Plaintiff explained that she suffered from asthma attacks four to five times a month.  That same report, however, concluded that Plaintiff was capable of performing light work.  Tr. 315. The other report stated that even though Plaintiff suffered from a number of affective disorders – including depression and PTSD – she was still capable of performing simple work.  Tr. 334.

Plaintiff also underwent a psychiatric evaluation conducted by Dr. Malter.  Tr. 311. The evaluation shows that as of August 2, 2010 Plaintiff suffered from depression and chronic anxiety, but did not experience suicidal ideation.  *Id*.  The report noted that Plaintiff was previously addicted to heroin but has abstained from using since 2007.  *Id*.  Dr. Malter also performed a "mental status evaluation" of Plaintiff, which concluded that Plaintiff was a "generally coherent and goal directed" individual whose long and short term memory is intact.  Tr. 312.  The evaluation also indicated that Plaintiff's "concentration was subjectively poor" and that her intelligence was "normal to low-normal."  *Id*.  While observing that Plaintiff was capable of managing her own finances, the report noted that Plaintiff's functioning was "quite constricted."  Tr. 311-12.

---

[1] Plaintiff's application to the Appeals Council for expedited review shows that her depression may have worsened since the ALJ's 2012 decision.  Tr. 526-33.  While the Court sympathizes with Plaintiff, it can only consider the record that was before the ALJ or "new and material" evidence that "relate[s] to the time period for which benefits were denied, and *[does] not concern evidence of…*the *subsequent deterioration of the previously non-disabling condition.*" *Raglin v. Massanari*, 39 Fed.Appx. 777, 780 (3d Cir. 2002) (citing *Szubak v. Sec'y of Health and Human Services*, 745 F.2d 831, 833 (3d Cir. 1984) (emphasis added).

On August 18, 2010, Plaintiff underwent a physical examination from Dr. Rubenstein. Tr. 300. Dr. Rubenstein noted that Plaintiff reported having asthma attacks four to five times a month, but had not needed emergency care for the condition since 2008. Additionally, Plaintiff's medication had been effective in treating her asthma symptoms. *Id*. Test results revealed that Plaintiff had "moderately advanced obstructive pulmonary disease" that responded well to bronchodilation. Tr. 301. Dr. Rubenstein also reported that Plaintiff had Hepatitis C, but did not require treatment for the condition. *Id*.

Additionally, the record includes reports from social worker Chananyah Silverman. In a 2012 psychiatric evaluation, Ms. Silverman noted that Plaintiff attempted suicide twice, one time in 2000 and another in 2006. Tr. 517. She also indicated that Plaintiff reported being depressed and unable to concentrate. *Id*. After conducting an examination of Plaintiff, Dr. Silverman concluded that Plaintiff was "friendly, cooperative…and engages easily." The report also concluded that Plaintiff was coherent and oriented with "sufficient attention and concentration." *Id*. at 518-19. Ms. Silverman opined that Plaintiff suffered from marked deficiencies in maintaining social functioning and concentration, but also noted that Plaintiff only experienced a slight restriction in activities of daily living. Tr. 524.

In providing her own testimony at the administrative hearing, Plaintiff stated that she suffered from back pain since 2005 and suffers with frequent bouts of exhaustion. Tr. 59-62, 69-70. Plaintiff also reported that she weighed 118 pounds, but that her typical weight was 105. She attributed the weight gain to "a lot of starched foods." Tr. 63. With respect to her daily activities, Plaintiff testified that she would frequently organize things in her room, write in her journal, spend time with a friend, attend church and watch her dog play outside. Tr. 67-68, 75. Plaintiff also testified that she was "scatter-brained," depressed, and anxious. Tr. 74-79. Plaintiff submitted a function report indicating that she suffered from anxiety and depression. Tr. 222-223. However, her report also explained that she was capable of cleaning the apartment, preparing her own meals, and following spoken directions. Tr. 223-226.

Finally, VE Patricia Sasona concluded that someone of Plaintiff's RFC (as concluded by the ALJ), age, education, and work experience has the ability to work as a table worker, final assembler, and small hand packager.

**B. The ALJ's Decision**

At step one, the ALJ found that Plaintiff did not engage in substantial activity during the relevant time period. Tr. 21. At step two, the ALJ concluded that Plaintiff had the following severe impairments: (1) a disorder of the back; (2) Hepatitis C; (3) COPD; (4) asthma; (5) affective disorder, including PTSD, OCD, ADD, depression, anxiety, and bipolar disorder; and (6) substance abuse (in remission). *Id*.[2] The ALJ found the

---

[2] The ALJ also mistakenly performed an obesity analysis at Step One. Tr. 23. Plaintiff

4

impairments to be "severe" under the Regulations "because a medical record supports a finding that they are medically determinable impairments which, when considered either individually or in unison, significantly limit the claimant's mental and physical abilities to do one or more basic work activities." *Id*. At step three, the ALJ concluded that Plaintiff's impairments did not meet nor were equivalent to one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. Tr. 21-23.

At step four, the ALJ found that Plaintiff has the RFC to perform sedentary work as defined under the Regulations, *i.e.*, she is able to lift or carry 10 pounds, perform unlimited pushing and pulling within that weight restriction, stand/walk for two hours in an eight hour workday, and sit for six hours a day so long as she is provided adequate breaks. Tr. 24. At step five, the ALJ concluded that given Plaintiff's RFC, age, education, and occupational history, she is capable of performing the jobs of table worker, final assembler, and small package handler. Tr. 33. After determining that a "significant number" of those types of occupations exist in the economy, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act and therefore not entitled to DIB or supplemental security income. *Id*.

In finding that Plaintiff was capable of sedentary work, the ALJ took into account a wide variety of sources concerning her mental health and functioning. Tr. 25. The ALJ pointed out that Dr. Malter's report showed that Plaintiff was a goal-oriented individual who possessed an adequate memory and communication skills. Tr. 26. The ALJ did note that Dr. Malter assessed Plaintiff as having a Global Assessment of Functioning score of 50, which denotes serious symptoms and impairment, as well as a "subjectively poor" ability to concentrate"; however, the ALJ found that the other aspects of the report demonstrated that Plaintiff was "capable of understanding and remembering simple work." *Id*. The ALJ also noted that records from a correctional facility that formerly housed Plaintiff concluded that Plaintiff was "oriented to all three spheres" and "calm, cooperative, and well groomed." *Id*. Of note to the ALJ was the fact that Plaintiff demonstrated no suicidal tendencies or need for impatient care since 2006. Tr. 28. Finally, the ALJ focused on Plaintiff's own testimony and self-completed reports, which demonstrated that Plaintiff was capable of, among other things, doing household chores, taking public transportation, managing her own money, and shopping. *Id*.

With respect to Plaintiff's back disorder, the ALJ focused on objective medical records showing that Plaintiff's back impairments were "mild." *Id*. The ALJ similarly noted that no physical examinations revealed any significant abnormalities. Tr. 29.

---

asserts that the ALJ instead should have evaluated her "malnourishment and extreme weight loss." (Plf's Brief at 24). The Court disagrees with Plaintiff's position because Plaintiff has never submitted that she was malnourished; instead, she attributes recent weight gain to a change in diet. *See* Tr. 63.

5

The ALJ also considered evidence pertaining to Plaintiff's respiratory problems, including a 2011 chest x-ray showing normal results[3] and a 2012 follow-up report showing no significant changes in Plaintiff's medical condition. Tr. 26. While the ALJ concluded that Plaintiff suffered from COPD, she also pointed out that a 2011 examination from her treating physician showed that Plaintiff's lungs were clear. Tr. 27. Similarly, Plaintiff experienced bilateral wheezing during 2011 and 2012 examinations, but the use of a nebulizer abated those symptoms. *Id*.

The ALJ declined to give controlling weight to the opinion of Plaintiff's treating physician, Dr. Dhirmalani. Tr. 30. Instead, the ALJ concluded that the objective medical evidence demonstrated that Plaintiff – while suffering from impairments – did not suffer from impairments so severe as to preclude her from all work. The ALJ specifically relied on the fact that Plaintiff did not require recurrent hospitalizations or emergency room treatment for COPD or asthma. *Id*. The ALJ similarly declined to give Ms. Silverman's opinion controlling weight because it was not consistent with the objective medical evidence. *Id*.

## III. DISCUSSION

Plaintiff challenges the ALJ's determination that she was not disabled under the Social Security Act. Specifically, Plaintiff argues that the ALJ committed the following errors: (1) failure to properly weigh the medical opinion evidence; (2) improper and inconsistent characterization of the record; and (3) failure to properly weigh the symptom evidence. The Court will address these arguments in turn.

### A. Step Four: Failure to Properly Weigh Medical Opinion Evidence

Plaintiff argues that the ALJ failed to properly weigh the various medical opinions, particularly those of Dr. Malter, Dr. Rubenstein, the state agency professionals, and Dr. Dhirmalani. The Court disagrees.

When determining a claimant's RFC, an ALJ will analyze and assign weight to medical opinions. 20 C.F.R. § 416.927; 20 C.F.R. § 404.1527. However, because the issue of whether a claimant is disabled is reserved solely for the Commissioner, the ALJ is not bound by any medical opinion. *See* 20 CFR §§ 404.1527(d)(3), 404.1545(a), 416.927(d)(3), 416.945(d)(3); *see also Kertesz v. Crescent Hills Coal Co.,* 778 F.2d 158, 163 (3d Cir. 1986) ("ALJ is not bound to accept the opinion or theory of any medical expert, but may weigh the medical evidence and draw its own inferences") Moreover, an ALJ has the authority to credit one medical opinion over the other, so long as the decision

---

[3] Specifically, the 2011 x-ray demonstrated "no evidence of congestion, infiltrate or effusion." Tr. 371.

6

is supported by substantial evidence. *See e.g. Nichols v. Commissioner*, 404 Fed.Appx. 701, 705 (3d Cir. 2010).

Plaintiff argues that the ALJ erred by failing to weigh the medical opinions of Drs. Malter and Rubenstein. Defendant counters that those two sources provided only "treatment records" – not medical opinions – and therefore the ALJ was not required to attribute any weight to either physician. The Court need not reach the issue of whether Drs. Malter and Rubenstein provided "medical opinions" because it finds that the ALJ considered and weighed their reports when reaching her determination. For example, the ALJ acknowledged that that Dr. Malter reported that Plaintiff suffered from "subjectively poor" concentration and a GAF score of 50, but nonetheless concluded that other evidence on the record demonstrated that she possessed the ability to, among other things, communicate and follow directions. Tr. 26 - 28. The ALJ similarly weighed the findings of Dr. Rubenstein, including medical observations that Plaintiff suffered from asthma. The ALJ nonetheless concluded that other objective evidence – such as chest x-rays – showed that Plaintiff's condition was controllable. Tr. 28-29, 32.

Plaintiff also argues that the ALJ erred in favorably citing to the non-examining medical consultant opinions on the grounds that those opinions were issued before the record was complete. However, "because state agency reviews precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision." *Chandler v. Commissioner*, 667 F.3d 356, 361 (3d Cir. 2011). Therefore, the ALJ was permitted to partially rely on the non-examining medical consultants, so long as she did not neglect the additional, subsequent evidence when rendering her decision. *See id.; see also Vergith v. Colvin,* No. 13-286E, 2014 WL 4262174, *9 (W.D.Pa. Aug. 27, 2014) (affirming finding of no disability where "medical records subsequent to the [non-examining consultant opinion] were considered by the ALJ.") And contrary to Plaintiff's position, the non-examining medical consultants' opinions are consistent with a finding of no disability because they both indicate that Plaintiff is capable of performing simple work. *See* Tr. 316, 334.

Finally, Plaintiff contends that the ALJ erred in overruling Dr. Dhirmalani's opinion that Plaintiff is only capable of less than sedentary work. The Court disagrees. A treating source's opinion on the issues of the nature and severity of an individual's impairment must be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(d)(2); Social Security Ruling (SSR) 96-2p; *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001). Moreover, "[a] treating source's medical opinion will not be entitled to controlling weight if substantial nonmedical evidence shows that the individual's actual activities are greater than those provided in the treating source's opinion." SSR 96-2. Here the ALJ declined to give Dr. Dhirmalani's opinion controlling weight for a variety of reasons.[4] She noted that despite the fact that Dr. Dhirmalani had

---

[4] While the ALJ noted that Dr. Dhirmalani *may* be financially motivated to submit a report

diagnosed Plaintiff with COPD, the objective medical evidence showed that Plaintiff's condition responded well to medication and had not required emergency treatment or hospitalization. Tr. 29. Additionally, the ALJ rested on medical reports, including x-rays, showing that Plaintiff – while suffering from a back disorder – did not experience the sort of back-related debilitation that would prevent her from working. *See* Tr. 27. The Court therefore concludes that the ALJ's weighing of medical opinions was proper.

### B. Step Four: Improper and Inconsistent Characterization of the Record

Plaintiff argues that the ALJ's finding of no disability is not supported by substantial evidence because it was premised on a mischaracterization of the record. As a threshold matter, this Court must evaluate the ALJ's findings "with the deference required of the substantial evidence standard of review." *Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002). In other words, "the question is not whether [the Court] would have arrived at the same decision; it is whether there is substantial evidence supporting the Commissioner's decision." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). This Court finds that the ALJ did not mischaracterize the record and the finding of no disability is supported by substantial evidence. In support of her argument, Plaintiff selectively quotes from different parts of the record that purport to demonstrate disability. For example, she relies on a 2010 Function Report in which Plaintiff described experiencing, among other things, depression, anxiety, panic attacks, and fear. However, the ALJ did not conclude that Plaintiff did not suffer from those ailments; instead, she found that Plaintiff did not experience them *to a degree* that would support a finding of disability. Other notes from the 2010 Function Report support the ALJ's conclusion: they show that Plaintiff was capable of shopping for groceries, preparing food, performing household chores, meeting a friend, and attending church. Tr. 216-228. The Court therefore concludes that the ALJ's decision is not premised on an improper or inconsistent characterization of the record and is instead supported by substantial evidence.

### C. Step Four: Failure to Properly Weigh the Symptom Evidence

Plaintiff also argues that the ALJ erred by failing to properly take into account the severity of Plaintiff's symptoms. The Court disagrees and concludes that the ALJ's findings regarding Plaintiff's symptoms are supported by substantial evidence. In support of her position, Plaintiff contends that the ALJ disregarded Plaintiff's own testimony stating that she would be unable to hold a regular job due to her depression. However, if an ALJ were required to entirely credit such testimony in every circumstance, there would never be a need for an administrative hearing because implicit in any application for benefits is an assertion that the claimant is unable to work. Instead, and as explained in greater detail in the foregoing sections, the ALJ concluded that other evidence – including Plaintiff's 2010 Function Report and other psychiatric evaluations – demonstrated that

---

that supported Plaintiff's application, she nonetheless relied primarily on other objective medical evidence when declining to adopt his opinion.

8

Plaintiff had the capacity to perform light work that did not require interaction with the general public.  Tr. 28.  The Court reaches a similar conclusion with respect to the ALJ's evaluation of Plaintiff's other symptoms:  the ALJ surveyed the various evidentiary sources, concluding that while Plaintiff did suffer from her impairments, her symptoms were not sufficiently severe to preclude her from performing all work.  Tr. 29-32.  The Court will therefore affirm the ALJ's decision.

## IV.   CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.  An appropriate order follows.

       /s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date:  November 24th, 2014**